Case Number 186320, United States of America v. Antonio Porter My name is Andrew Brandon. I'm here representing Antonio Porter and at this time I'd like to Your Honors, now is not the time and this is not the case. Now is not the time for this court to expand its Fourth Amendment jurisprudence to hold that the mere odor of marijuana on a doorstep is sufficient probable cause to assume that there is evidence of a drug distribution inside of a house. We live in a time where there is greater and greater access to legalized marijuana. Not in Tennessee, but certainly there is more and more access to legalized marijuana to where it's not fair to assume that because somebody has, because there is a smell of marijuana in a house. But why in Tennessee would that be a problem? I understand your argument if you're in Well, I'm suggesting that it's a problem to assume that there is, as this warrant did, that there is evidence of distribution, of paraphernalia, of essentially a drug trafficking operation going on in this house. I mean, right, the ultimate inquiry is whether they'll find evidence of a crime. And in Tennessee, mere possession is a crime. And so the question you're asking not to expand is I assume the Carr case law that says smelling is enough. I don't understand why the fact that they're in Tennessee it matters. Yes, Your Honor. But I do think it's important to note that we might have a different case if the officers had said, dear magistrate, we have an odor of marijuana and we would expect to find evidence of distribution, paraphernalia, all the things associated with distribution. And I would question whether or not that magistrate would say, yeah, that's an adequate reason to enter the home. But isn't that the problem here, that the affidavit says that there is probable cause to believe that there is drug paraphernalia in the home, whereas the only thing that the officers knew was that there was the odor of marijuana. Well, that's correct. They also, may I interrupt, they also had the statement of the arrestee that he had smoked and they would find a blunt in there. They had that too. That statement did appear at the suppression hearing. It does not appear in the Warren affidavit. But yes, the Warren affidavit states that we'll find marijuana and paraphernalia associated with the use, packaging, sale, and distribution of illegal drugs. And so, again, we have this issue of things like CBD oil, more and more things that smell of marijuana to where the mere odor of marijuana should not get us a warrant to search a house. But this is also not the case. And the reason it's not the case, Your Honors, is that there are two egregious factors sort of in addition to just that issue of the smell. The first egregious factor is that we learned in the suppression hearing that the Pulaski arrest warrant, they go ahead and enter even though they don't have a search warrant, even though clear Sixth Circuit precedent and Supreme Court precedent and buoy. Can you remind me, so I'm forgetting, I thought what happened was he came out. Did they go in to get him? No, he came out of the house and they arrest him. They take him to the car. And then they went in to help her out and then ultimately to help the children out. That's correct, Your Honor. But there's a query why they had the right to go in. The police had arrested Porter outside and had taken Porter to the police car. So the police purport to be, quote, securing the house. What does, and my understanding from the suppression hearing is that the police say, oh, in Pulaski, we always go into the house to secure it. Everybody knows that. Am I misstating anything? No, that's correct. They said, oh, yeah, this is special police speak that we have. I mean, even the magistrates know. So what is the law on if you arrest somebody outside his home and have him at the police car, what is the law about what the police can do while they are waiting for a search warrant to be issued by a magistrate? Well, Your Honor, so ordinarily the police might be able to conduct a buoy search, but that search can only occur if they go into the house in order to serve the arrest warrant. When the person has stepped outside of the threshold, this issue is controlled by this court's published precedent in Archibald, I believe it's called, that says that at that point you would need to have some indicia of some sort of officer danger to justify going in the house. Okay, and officer danger here, arguably, you can tell me why it's wrong, is this woman who is far, far, who was known to be present in the house because she had come to the door, right? Yes. So did the police, under the law, have the right to go into the house to, quote, secure it when Porter was arrested and taken to the car? They did not, Your Honor, and the reason for that is that there has to be some indicia of dangerousness beyond just, well, we're arresting a dangerous guy, and Archibald is extremely clear about that. It says we can't just sort of transfer the dangerousness to him. What if they were worried she was going to destroy evidence? I think there would need to be some observed evidence of that. In this case, we know they weren't worried about that because even when they went into the house, they let her go off into rooms where they couldn't see, they couldn't follow her. They clearly weren't concerned. She came to the door in a T-shirt and underwear. I mean, she was asleep. There were five kids in there, and so there was just no indicia of any worry, and I think Archibald stands for the fairly clear proposition that you can't just gin it up by assuming that in every case somebody could go in and destroy evidence because, I mean, that is certainly true of really any case. It so happens that there was no drugs to destroy in this case. And I think that gets to the second sort of point of inflection here, of sort of egregiousness, is that they in fact went into the house illegally, and then when they got there, they found something extraordinary, which is nothing at all. More specifically, they found five children in pajamas who were asleep in various bedrooms of the house, and they found their mother who had been asleep and who was awakened at 4.30 in the morning. And they specifically stated, oh, no, we saw no contraband whatsoever. Not only did they say that, but they then said, contradicting every police report written in this case, they said there was a second phone call to the magistrate in this case. We made a second phone call just to make real clear that we had entered into that house, and incidentally, we'll make real clear by using the least clear language possible. But we really want to dot our I's and cross our T's here and let the magistrate know that we have gone into the house. So how was the magistrate, the issuing magistrate, told that? Well, there was a call to the affiant. There was an initial call to the affiant that said, hey, we smell marijuana, get a search warrant. And that is consistent with all the police reports. In the suppression hearing, apparently they testified that there was a second call, and incidentally, this second call was necessary because to the warrant affiant. So it wasn't a call to the magistrate. That's correct. And the magistrate didn't know about the second call, correct? Was the hearing in front of the magistrate issuing the search warrant? Right. I believe that's correct. There's no reason to believe that there was any hearing or anything. So we really have to be looking at the four corners of the affidavit, right? Well, not necessarily in the Frank's context. And so I guess my point here is that we have this concern where they make a second call, and they don't mention that, hey, I know we said there's going to be evidence of drug distribution, paraphernalia, all of this, but by the by, we found five sleeping kids and their mother in the house and no evidence of drugs. But they didn't search. I mean, it's undisputed they didn't search when they went in. I mean, drug evidence can be anywhere. It's not going to be out in the open in every house. Well, it could be, but this highlights where the sort of. But they said they secured the residence and that that was understood to mean that, I guess, they went in, which I agree would use puzzling, but. Well, right. They did say that they, I mean. In the affidavit it says secured. Earlier in your own argument you said everyone knows what that means in Pulaski County. Well, they said that, yes. I'm sorry? Yes. The officer said that. I don't agree with that, but they suggested that that was true. I mean, isn't it, if you're right about some of this, isn't there some factual findings that need to be made by the district court judge about these things? Aren't these questions of fact versus questions of law? Well, in this case, the judge basically decided that because there was no evidence found, the court didn't have to address that issue. And so our point was, and we made this in our post-hearing briefing, there's a big problem if they found nothing and we made this argument, but the court made no findings, was satisfied that the lack of findings. Can I ask you one quick question? What about Good Faith, just real quick, and the McLean case in particular? I'm going to have to review the McLean case a little bit closer, and I will do that. But on Good Faith, in this case, there does appear to be a reckless disregard for the fact that if we said there's this strong odor of marijuana and that means drug distribution inside the house, they go in, they go in multiple times, take five children, their mother, carry diaper bags. That's one I don't buy as much because if they're truly not searching and they're helping out, that's a different, right? They're serving a different function there. There's a difference between searching and just going in. If someone says, come help me carry this piano, and you help them carry the piano out, you're not searching the house. It could satisfy security. I agree. Can I briefly address that? I think the distinction there is that when there's testimony that there is actually a second call to the magistrate saying, hey, we went in there, and they specifically don't make any reference to the fact that they found nothing, that we have a problem here. Really? So they have to find stuff in plain view as your new standard. Otherwise, there's no probable cause. That is not my new standard, Your Honor. When you go in saying there's a drug distribution ring going on in this house, and instead they find five kids, their mother, all asleep, they go through more than 50% of the house. I said there was a drug distribution ring. It said there would be evidence of drug dealing. Evidence of drug distribution, yes, Your Honor. Okay. Thank you. Thank you. Thank you, Your Honor. May it please the court, Cecil Vandemeter on behalf of the United States. On page five of the court's reply brief, he describes this court as having, quote, continually required more than the smell of marijuana to allow police to search a person's home. I think that's wrong, and I want to start by talking about why. So he cites three cases for that proposition, Elkins, Frisky, and Brooks. And looking at those cases, I think, demonstrates that this court has never said that. In fact, it suggested strongly the opposite. So Brooks in particular, I think, is important to look at. That's a reported 2010 case where this court found that paragraph nine of the search warrant affidavit, standing alone, established probable cause. And it's true that that paragraph referred both to the detection of the odor of marijuana and seeing some seeds and seeing cash on the person. But when you get into the analysis section, it's clear that it's the detection of the odor that's driving the probable cause. There, the court says, once an officer detects an odor of marijuana emanating from a particular place, the only way for there not to be probable cause is, quote, if the magistrate were required to assume that the defendant had just smoked his last bit of marijuana immediately before the officers arrived. We do not think that is the case. Which of the three cases is that? This is Brooks, Your Honor. And then the court goes on to kind of memorably summarize this issue, saying, quote, we find it fairly probable under these facts that where there is smoke, there may be more there to smoke. And so I think far from imposing some rule, as Porter would have it, that this court is continually required more than marijuana, this court has never held that. In fact, it's strongly suggested that odor, like many other senses, can provide probable cause. So it seems to me your friend's argument is not per se, I get what he argued in his briefs, but is that the smell alone doesn't prove distribution, which is what they charged there was probable cause of, versus probable cause of possession. So I think that would be an argument about overbreadth. So the affidavit says, we believe that there is marijuana and paraphernalia associated with use, packaging, sale, and distribution of drugs. So perhaps, you know, there's something to be said that it should have only said use and packaging. Why even packaging? I mean, isn't the odor of marijuana at bottom only suggestive of presence of marijuana and not anything else unless you have more? I think that's probably fair to say. If you smell the odor of marijuana, that gives probable cause to believe there may be more marijuana in the place from which it's emanating. You're using the word more, that there may be marijuana, because he didn't have marijuana on him when he was arrested, right? Not on him. My colleague suggested that they never found any in the house. They did find some marijuana. They found two burned marijuana products. That's right. And so when I say more, I guess what I mean is there was the marijuana that caused the smoke or caused the smell, and then it's reasonable to believe that there may be more inside, as the court said in Brooks. So this affidavit would appear to be overbroad, as you used the word overbroad, to have the idea that there's paraphernalia associated with packaging, sale, and distribution. I don't know that I'm ready to concede that it is overbroad, but even if it were, it wouldn't provide a basis for suppression. All it would provide would be a basis for striking that part of the affidavit? Which would not change it. Because your position is that if the police smell marijuana when the door is opened, they can obtain a search warrant without anything more. Yes, Your Honor. What if they live in an apartment house where other people are smoking marijuana but not them? So we're certainly not asking for a rule that any time police officers smell marijuana anywhere, it provides probable cause to search anywhere nearby. They have to show probable cause that it's emanating from a particular place. Here they did that, and that doesn't sort of open the parade of horribles that I think Porter has suggested that this rule would kind of allow everywhere to be searched. Okay, so there are certain extenuating features here. Are they in the affidavit, what the extenuating features are, or is it something that you can find out later on? I'm not sure I would describe them as extenuating features. I think I would just say there needs to be probable cause that the odor is emanating from a particular place. Here they describe it as emanating from the residence when he opens the door. If it were an apartment, you agreed it could have been somebody else's apartment. If it's just out in the hallway. So if officers are walking down the hallway, smell a generalized odor of marijuana, it's unclear where it's coming from, that's not going to establish probable cause to search any particular apartment. Okay, and here it does say in the affidavit it was a mobile home, and it gives the number and so forth. So essentially then you're saying that the police can get a search warrant any time that there is a self-contained home where when the door is opened, the smell of marijuana occurs. I think so. That doesn't give you trouble as a citizen? Well, I think there are a few things to consider. I think if the affidavit lays out there's no smell of marijuana, the door opens, smell comes out, that establishes probable cause that there's contraband inside. If the concern is how this might apply more broadly, there are a number of pragmatic considerations that would limit those concerns. For example, under Florida v. Jardines, police can't just come up to any home and start smelling around at the doorway. Here, of course, they were not doing anything like that. They had a validly issued arrest warrant, which under New York v. Payton allows them to go into the house if necessary to arrest the arrestee. And I think if this were a concern, given the long line of vehicle cases where this court has squarely held the odor of marijuana establishes probable cause to search, I think we'd see that playing out there. You certainly don't see any situations where police officers walk through a parking lot, smell marijuana, and just search. Which, would you say, were the other home cases? I'm sorry, you said Brooks, and what were the others? Elkins and Frisky. Those were the other three he cited for that proposition. And so I might talk just very briefly about these vehicle search cases, because again there's this long line of cases very squarely holding detection of the odor of marijuana by someone recognized to detect it establishes probable cause. The difference between the vehicle search cases and the residential search cases is not what evidence is necessary to establish probable cause, it's what happens once probable cause has been established. In the vehicle search context, officers can search without a warrant. In the residential search context, in the absence of accident circumstances, they have to go present that evidence under oath to a neutral attached magistrate and seek a search warrant. And if there were to be a different rule between the two contexts, it's actually very counterintuitive, I think, to say the odor of marijuana suffices to authorize a warrantless search but does not suffice to establish a search pursuant to a warrant. And part of the reason for that is when this court or when a lower federal court considers a suppression motion based on a warrantless search and seizure, it's essentially deciding de novo whether probable cause existed. But when it's evidence seized pursuant to a warrant, the court applies a deferential standard and just says was there a substantial basis for the magistrate's finding. So I think it would be very strange to say de novo, odor alone establishes probable cause, but under this deferential standard we can't say there was a substantial basis. Can you address the securing of the house both in terms of what securing of the house should entail and also with respect to the affidavit? So with respect to the statement by the police here that in Pulaski or Pulaski County, whichever, it's known that securing the house means you go into the house. Is that a common understanding that we should know as a court? You know, I think it's not quite right to say securing always and necessarily means going in. I think the testimony in context is essentially securing the house often involves going in when you, as here, you know there are other people in the house. So what is it that made it proper for these police officers to go into the house? It is because they knew that the woman was in the house? So if I could preface my direct answer to your question very briefly, our position, of course, is the legality of the searches is not properly before the court because under Segura, under Michigan v. Hudson, whether those entries were legal or illegal has no bearing on the seizure of the evidence. And so the exclusionary rule wouldn't apply in any event. But if the court wants to analyze whether those entries were valid or not, I think the proper framework is actually not the protective sweep doctrine of Maryland v. Bowie, but the impoundment doctrine of Illinois v. MacArthur, which is a Supreme Court case, basically says, you know, when officers are seeking a search warrant and they have some reason to believe the evidence could be destroyed because there's someone left behind in the home, they need to balance the privacy interests of the person and the... Can I interrupt on that? I'm sorry. Because where I struggle with that is, correct me if I'm wrong, they got her out and then all that was left was the sleeping kids, right? That's right. How would that help you in that circumstance? Because I get the concern with regards to her, but how does it... With regards to the kids, there's no evidence they were worried the kids would do anything. Correct. And so they didn't go in to ensure that the kids weren't destroying evidence. What they did is they went back in to keep eyes on Ms. Furr as she brought the kids out because of their concern that she could destroy evidence. But you're saying then that any time somebody's been arrested, as Mr. Porter was, and taken away, that while the police are trying to obtain a search warrant, they can take any other adult person from that house, regardless of whether they have any suspicion about that adult person? No, I think there's some need for suspicion, but it's not... What suspicion do they have about Ms. Furr? Well, I think it can just be sort of contextual. This is someone they don't know. It's the girlfriend of a known gang member. She's aware that we're seeking a search warrant. She's aware that we've detected the odor of contraband. How do you deal with the Johnson case from the Supreme Court? Which Johnson case? So Johnson is the one where you would like the fact that when they smelled opium, that gave them an off. But Johnson, they held there's no exigency allowing the officers to go in, even though they heard shuffling noises and spoke to a woman in the hotel room who denied there was a smell of opium, even though there was opium. I mean, I agree with you it's not contingent on the search, but I'm troubled by the notion that officers can go in on just a hunch. Well, I think the Illinois versus MacArthur case kind of gets into that. So there's kind of, we need to have people outside of the house to make sure that kind of the status quo is preserved while we seek a warrant. And then in the meantime, you can balance the person's need for personal privacy with the legitimate law enforcement needs in preserving evidence. And so in that case, it's actually the defendant, the homeowner, who goes back in several times. When he does, the police accompany him in just to keep eyes on him, ensure he doesn't do anything. But I thought in that case they had a worry vis-a-vis him. Well, you know. Like a specific worry. I don't think the standard is, you know, unless the person left inside has told us, the second you walk off I'm destroying evidence in this house. I don't think there needs to be some heightened standard of probable cause. It's just, you know, is there a reasonable cause to believe that this person who is the girlfriend of the arrestee, the person who lives in this home for which there's probable cause to believe there's contraband inside, could destroy evidence. Then you're basically saying any time you arrest somebody outside his house, put him in the police car, you can then say anybody in the house is risky. Because all the things, you know, you've arrested him because he is a gang member, you've arrested him because he's done something wrong. Of course this person in his house is somebody that he knows and likes. They're going to want to protect him. So they're going to either find a gun and shoot the police or they're going to destroy evidence. So, I mean, you are automatically saying that in order to secure the house, you do have a right as police officers to enter the house. Well, I think there's an ingredient missing there that maybe was implicit in the question, but there also, of course, has to be independent probable cause to believe that there's additional evidence in the house that they're in the process of getting a warrant. Right, the odor of the marijuana. So it's not any time someone gets arrested. It's someone gets arrested, there's probable cause to search, they're in the process of getting a warrant, there's someone inside, there's a concern that that person could destroy evidence in the interim. And, again, the Illinois v. MacArthur case talks about reasonable durations. Let me give you, so if there was no probable cause, and they thought there was, and they secure, and that is the basis for their probable cause, they see something, you agree we'd have to suppress under that scenario? I think that would be right. So if there's no probable cause, let's say, for example, for whatever reason they're going to seek a warrant, but they have not detected the odor of marijuana, there's nothing to establish probable cause, and they say, well, let's just go in and secure it just in case we later decide to seek a warrant, and then see something inside and try and rely on the plain view doctrine as a basis. I think that would be suppressible. Can I ask one other question? I'm sorry it's unrelated, but the exigency then, the exigency rule that allows you to go in, it seems to me in response to Judge Moore's question that you would say any time there's an adult in there, they can go in. Well, I think, let me add one more just kind of wrinkle to this case, which is that it's not actually entirely clear from the suppression transcript that they went in and forcibly removed Ms. Furr. She came out, and then when she went back in, they accompanied her to ensure that she wasn't destroying evidence, and I think that is permissible. So they're accompanying her vis-à-vis the destruction of evidence as opposed to officer safety. I think that's right. I mean, they talked about both concerns, but I think the destruction of evidence is kind of the more salient concern. But again, if I might, well, I see my time is up. I was just going to. Yeah, so one question. Your other side has argued that they've put in something in this affidavit. During the time the residence was secured, there was still an odor of marijuana that could be smelled by the officers. So something is put in in the affidavit that talks about this time. And reading between the lines, we know now that it's while the officers are inside the house. Why shouldn't they have simultaneously included but we didn't see anything in plain view? So I think that goes to basically the frank standard for material omissions. You know, is the additional information so material that they were obligated to include it? And I think we would accept the proposition that there may be cases where, while seeking a search warrant, you go in and it's just obvious that what you thought would be there was not there. This is not one of those cases, as I think some of Judge Barr's questions alluded to. If what you're searching for is contraband and you go in and just kind of watch a person as she gathers her children, don't open any drawers, don't open any cabinets, the mere fact that you haven't seen contraband while not searching for it and while watching a person get her kids out is in no way material to whether there will be contraband there. It is a troubling case in that what happens, of course, is that they find the firearm, which has nothing to do with anything so far that we've talked about, under the bed. That's correct, Your Honor. Has the fishing expedition gone bad, from his point of view? Well, there's been no indication, Your Honor, that the execution of the warrant exceeded its scope. Anything to that effect, they did find guns possessed by a felon in a room with children and prosecuted the case accordingly. Thank you. Briefly, Your Honors, I did want to mention two very quick things. One is Illinois v. MacArthur and the impoundment doctrine. That's the first I've heard of this in this case. It's not in the government's brief, and I don't think the court should consider that. Secondly, it's not just that they hadn't seen contraband, but they walked in and they said, yeah, the smell didn't get any more intense. We didn't notice anything new in there after this very profoundly strong odor of marijuana outside the door, which incidentally we couldn't tell, despite our training on this subject, we couldn't tell whether it was green or smoked. They're essentially, they walk in, their noses. What do we do with the fact that the police, in talking to Porter, said, hey, we smell marijuana, and he said, oh, yeah, I just finished smoking a cigarette, a marijuana cigarette? Well, it was the night before. That he had had it. Yes. Well, the night before the morning, i.e., within 12 hours, no? Yes, correct. And I think that, again, that fact is not in the Warren affidavit, but regarding the Franks thing, again, if we had been talking about we expect to find this smoked blunt or whatever in the house, then that would be just a different case. What about their point that it's just overbroad and you can strike that stuff, it doesn't affect probable cause? Well, I mean it. He's admitted that he smoked marijuana in that house within 12 hours. Why does that not suffice to say there's probable cause to get a search warrant? Well, that would actually mean the exact opposite, which is that there wasn't marijuana at that point. He continued to smell it. I mean, right. So he's corroborated at least that there was marijuana in that house in the past, and they continue to smell it. So, and then, I'm sorry to interrupt you, and the affidavits includes things they would get for possession, and then I agree with you, is well beyond what they would get. It just, if you imagine a police officer coming to your home and saying, you know, you open the door and they say, I smell marijuana, and you say, well, okay, I didn't, you know. I just smoked a cigarette. I mean, he admitted it. But then the officer says, I'd like to come in and search, and you say, well, go ahead and get a warrant. And then they say, all right, I will. I'll make a phone call, and I'm going to enter the house. And then they start entering the house. But why does that affect the probable cause determination? I agree with you. That's problematic, and they shouldn't be doing an absent, a delineated exception to the rule. But why does that affect the ultimate probable cause inquiry as to whether there was a substantial basis for the magistrate to conclude? I'm arguing on the frank side of things to say, not only do they go in, but then you say, I thought you were waiting for this warrant, and they say, well, we are, and you say, look around. There's nothing here. Yeah, we're going to secure the house and make sure. And then they find nothing, and then they call the magistrate back and say, just wanted to let you know we're being very responsible. We went into the house. Then hang up the phone, and you say, why didn't you also mention that there's no marijuana distribution here? It's disturbing, Your Honors. Thank you. Thank you both for your argument. The case will be submitted.